Good morning. May it please the Court. My name is Ilya Alexeev and it is my privilege to argue this case on behalf of defendant and appellant Artur Elizarov. Before I begin my argument, may I please reserve three minutes for rebuttal. Okay. Watch your clock, please. Yes, Your Honor. The Court should vacate the preliminary injunction for three reasons. First, the District Court used an incorrect standard of review and therefore abused its discretion when the Court found that a mere allegation of a claim for restitution based on a judge's enrichment rather than the likelihood of prevailing on that claim was sufficient to justify the preliminary injunction. In a case that seeks to collect a debt in which no lien or equitable claim is asserted, Rule 65, as interpreted in Grupo Mexicano, does not vest the District Court with authority or jurisdiction to restrain a defendant's assets or prevent the defendant from using those assets prior to the judgment. In the preliminary injunction, the District Court did not conclude otherwise. The Court did not rest its decision on Goldwater's claim for breach of contract. Rather, the District Court found that because the complaint included a claim for unjust enrichment, which is equitable in nature under California law, that was sufficient to justify the granting of the preliminary injunction. That ruling was an error for two reasons. First, the Court used an incorrect legal standard. To issue a preliminary injunction, the District Court had to find the likelihood of success on the merits. Merely finding that a litigant asserted or alleged a claim in the complaint is not sufficient to satisfy Rule 65 requirement. And yet, that is exactly what the Court regrettably did in this case. But, even if the Court were to apply the correct standard, given the evidence and the record before the Court, there was nothing that the District Court had before it that would have justified such a finding for two sub-reasons. One, under California law, the claim for unjust enrichment, which is essentially a claim for restitution, cannot be asserted when the gravamen of the claim is based on a valid and enforceable contract. So, to find that Goldwater did make a sufficient showing of likelihood of prevailing on the merits of that claim, the District Court had to find that there was some evidence to suggest that the note and the deed of trust, which collectively constitute the contract, were somehow unenforceable. But this is all tied up in what's equitable and what's legal and so on, but I assume we're looking at a constructive trust. That sounds like an equitable remedy to me. Correct, Your Honor. And constructive trust under California law is a claim for restitution, which is directly tied to the general principle in California that equitable remedies, such as restitution or an equitable trust, are not available where a legal remedy can readily be provided. I read California law differently on that point. It seems to me that constructive trust is available under these circumstances. Let me understand the narrative here. Yes, sir. So, there's a mortgage. Goldwater somehow fails to record the mortgage. Correct. And at the sale of the house in Palm Springs, a substantial amount of money, because it's not recorded, goes to your client. Your client takes that money and buys a house in Florida and uses some of the other monies and other things. Goldwater figures out what's going on, brings a suit for the money that's owing under the mortgage, and now says, and some of that money has gone into the Florida house, and really what they want is an injunction to dissipation of the assets. What's wrong with that? I will explain to the Court. Or did I misstate the narrative? Basic facts, no. There's one additional fact that's missing. The only reason Mr. Lizeroff did not immediately repay Goldwater is because Goldwater did not comply with its contractual obligation to give Mr. Lizeroff a 30-day notice of its intent to accelerate. There are some mortgages in California where the bank is entitled to accelerate its loan and obtain the entire amount in full immediately upon the sale. Goldwater's contract did not include such a clause. It's long past 30 days now. Correct, Your Honor. But, again, by the time Goldwater exercised its right, Mr. Lizeroff had used the funds. So, in other words, my argument is simple. Does that mean the debt disappears? No, of course not. And, again, my argument is not that Mr. Lizeroff is entitled to keep the money and never pay the bank back. The argument is that by having failed to exercise its contractual right to accelerate the debt in a timely manner, Goldwater must simply continue to accept monthly payments from Mr. Lizeroff as stipulated in the contract and the existing amortization schedule. Mr. Lizeroff never claimed in his answer and affirmative defenses that the money is now his and Goldwater cannot possibly recover it. All Goldwater had to do was give the notice, and by its failure to do so, it simply had to continue to accept the $4,000. And is your argument it still has not provided the notice of acceleration? It provided the notice, but it was untimely, because by the time the notice was provided... No, maybe I should ask it differently. Having failed to provide it within 30 days, is it your argument they can no longer ever provide notice that would accelerate? Correct, because it wasn't timely. So there's no way, if they missed the 30 days, there's no way they can accelerate? That is the way I interpret that contract, Your Honor. That sounds crazy to me. That was Goldwater's contract, Your Honor. We did not write it. Mr. Lizeroff didn't write it. And more importantly, Goldwater knew for at least two months that Mr. Lizeroff was selling the house. Mr. Lizeroff notified them in February 4th, long before he even knew that the deed hadn't been recorded, and Goldwater simply sat on that right and did absolutely nothing until 14 days. Actually, it was May 14th, I believe, or May 12th when they finally gave the notice, and only after I, in my briefing with the district court, alerted the district court to the issue that this deed hadn't been recorded. So that issue is just a matter of a contract, but in terms of an equitable trust, Your Honor, the way I interpret the law, and of course this court is the final arbiter of what the law says, but the way I interpret it, if there is a valid contract, which in this case there is no dispute that there is, equitable remedies are not available, and I can also cite the court to DVD copy, Control Association versus Kaleidoscope Incorporated, 17 Calab 4th, 97, 726, citing Supreme Court cases, which again says that equitable remedies, all equitable remedies under California law, are not available when there is a remedy in law, which is essentially damages that Goldwater is seeking by its first cause of action for the breach. Could I go back to your answer to the preceding question? Yes, sir. Has your client been paying the rent? They have not billed him. Goldwater's claim since day one, since they filed the lawsuit, was we want the entire amount back. They have never billed him for any of the amounts. He has not received any invoices. I, as his counsel, have not received any invoices because Goldwater's posture since the very beginning has been we want the entire amount back. That's what they have done. But your argument is that all they're entitled to is, did they have to, under this, assuming that everything went smoothly under the original arrangement, did they have to send them a bill every month for the amount due? That's what they had done, yes, Your Honor. That's what they had done. Were they obligated to? Well, if they wish to receive their payments, then I would assume that's the way it would have to work. They have to bill for it, but because the way the litigation— The client knew what he had to pay. Correct, but— And he hasn't yet paid them a nickel. Because that was not Goldwater's position. Goldwater's position is we don't want monthly payments. We want the entire amount. Well, that's Goldwater's position, but your client's position is that what I owe is the monthly payment on the mortgage, yet he's refusing even to comply with his own position. He hasn't refused, Your Honor. Maybe he's not refused, but he's certainly failed. Yeah, that's correct, Your Honor. He has failed, but it's only because Goldwater's claim since the beginning has been we don't want monthly payments, we just want the entire amount. If they start billing today, he will resume payments immediately. And what about the past payments? He hasn't made—I haven't calculated how much time has gone by since he stopped paying. But what about those payments? Is he prepared to make those payments? I will have to discuss with him, but I'm quite sure that that would be conceivable because, for example, there's still $70,000 that's frozen in an ally account. That will cover a substantial chunk of what's outstanding, and I'm sure that the rest can be covered as well if that's what Goldwater wishes. But, again, that is an issue of a contract, whether or not that is the type of damages that the jury will ultimately award to Mr. Lizeroff. It doesn't quite address the issue whether or not the Grupo Mexicano, the court, had the authority to freeze Mr. Lizeroff's assets until the jury decides whether or not he has to pay the entire amount or whether he is obligated to make the monthly payments, which is what my main issue in the case is. The second issue, Ron, aside from that main issue, is the district court has also incorrectly decided that Goldwater is likely to suffer irreparable harm. Under the circuit's precedent, irreparable harm has to be more than merely pecuniary harm. In this case, the only harm that Goldwater has asserted is money that it wants to collect from Mr. Lizeroff, which, of course, is... Oh, it's concerned about dissipation of the assets. I'm sorry, Your Honor? It's concerned about dissipation of the assets. That's its irreparable harm. But the asset, it's still financial harm. It is not anything beyond simply recovering money. All it wants at the end of the day is the balance of its loan, which is money. We're not talking about a river that's trying to flood somebody's property. We're not talking about some sort of loss of customers or something else that's intangible or not monetary or quantifiable. It is simply the money that Goldwater wants at the end of the day from Mr. Lizeroff. But inability to collect the money is irreparable harm. So the argument is that we're moving from a position where the money is at this point collectible because we've got the house in Florida, whereas it may in the future not be collectible if the assets are dissipated. And the inability to get the money is irreparable harm. That's the argument. I don't believe I saw that specific argument in counsel's... Well, it jumps out at you. You don't have to make it explicitly. It's so obvious. So if that is the court's conclusion, then that will certainly resolve that issue against me, but I still wanted to raise it with the court. And my final issue is the amount of the bond. The court set it just at $2,500, which even under court's own calculation is insufficient. The court decided that the proper method for calculating the damages is 10% on the amount restrained times the number of days that the injunction would be pending. And by the time the court issued the injunction 365 days later, the amount still stayed at $2,500 that the court initially set when the court issued the TRO. So I'm at 2 minutes and 35 seconds, Your Honor, and I will conclude my argument. Does your client plan to sell the house that he owns now? I'm sorry, Your Honor? Does your client plan to sell the house that he owns now? He does not. It is his residence. He has improved the property, and it is occupied. So the plan is not to sell it. The plan is for Mr. Lizeroff to continue to live in that property or to keep it as a retirement house. Basically, the amount of the bond is irrelevant right now. Well, it's not, Your Honor, because we still have $70,000 that's held in the account. And, two, Mr. Lizeroff cannot encumber the property, for example, to obtain a loan for further improvements. So in that sense, there is still harm that would exceed $2,500 that the district court initially set. $70,000 you just conceded almost he owes. He hasn't paid rent. Or not rent. He hasn't paid the mortgage payments. If the court interprets the facts in a way that Mr. Lizeroff had to make the payments even without a demand from Goldwater, then yes. But, again, my argument is that because Goldwater has never demanded that money, their demand has always been we want the entire amount up front. My argument is that that money still belongs to Mr. Lizeroff until there is a final judgment in the case. All right. Thank you, Counsel. Thank you, Your Honor. We'll have a minute left, and we'll hear from Mr. Wagner. Good morning. May it please the Court. My name is Sean Wagner, and I represent the appellee in this matter, Goldwater Bay. As the court alluded to in its questioning of counsel, this case involves a unique pattern of conduct, ultimately designed to deprive Goldwater of its ability to collect after a sale took place involving fraudulent conduct. And the record before the district court clearly demonstrated a concerted effort to defraud Goldwater Bank and systematically deprive it of the ability to collect on its security interests. So would this case be here if the deed of trust had been recorded? No, Your Honor. Admittedly, it would not be here if it had been recorded. This is a classic case where, generally speaking, this would be a race notice case. But what makes this case unique, and what probably justifies the injunction in large part, is the conduct of the borrower, the appellant, after determining that the deed of trust was not recorded. And more specifically, I think the court's recitation of the facts is correct, but there is some detail around what took place immediately after the appellant discovered that the deed of trust was not recorded. Number one, the appellant instructed the escrow company to stop communicating with Goldwater Bank and told Goldwater Bank at one point that the closing had fallen through. He also informed Goldwater Bank that he was insolvent and that the proceeds of the sale of the property would not be enough to satisfy all of the liens on the property. That representation was based on the fabrication of a mechanics lien that he told Goldwater existed that it turns out never existed. No mechanics lien existed, and there were more than enough funds to satisfy all of the liens, including Goldwater Bank's lien. He used these misrepresentations as leverage and ultimately promised Goldwater Bank that even though there weren't enough funds to cover all of the liens, that he would pay them $675,000 at closing. Elizaroth then sold the property to Mr. Hallett on March 25th, but he intentionally misled Goldwater Bank and represented that the sale had not occurred, and he never provided any of the funds that he had promised to Goldwater Bank. Then after getting the funds, four days after closing, when Goldwater Bank inquired about the status of the loan, Mr. Elizaroth denied that the loan had closed and discontinued substantive conversations regarding the matter. He never admitted that it closed, and he never paid Goldwater. But even worse, after Goldwater found out that the loan had closed and that he had received proceeds— Yeah, sorry. My apologies, Your Honor. That the sale of the house, the transaction had closed, and that he had received proceeds, Goldwater sent a pre-litigation demand letter and demanded that Mr. Elizaroth live up to his promise and outline what it understood to be the fraudulent conduct that led to this. In response to that, within five days, Mr. Elizaroth was under contract. With the proceeds, a $630,000 house in Cashen, Florida that he closed on on an expedited basis within 10 days. Then after discovering that Goldwater was seeking a TRO, Mr. Elizaroth further dissipated, and on the day that the TRO was entered, he paid off a nearly $85,000 loan on behalf of a third party, further dissipating the proceeds. And that's really why we're here. I mean, I think in a situation where there wasn't the fraudulent conduct that led to Goldwater not taking steps to further protect itself and the dissipation of assets, I don't think that we would be here. I think this case is unique in that respect when it comes to cases where the deed of trust is not recorded. And based on those facts that were presented to the district court, and applying the familiar winner's factors, the district court found that the record before it supported the entry of a preliminary injunction. And that decision is reviewed for an abuse of discretion utilizing a two-part test. One, the first question is whether or not the district court applied the correct legal test. The second is a determination of whether the district court's application of the rule was illogical, implausible, or without support or inference in the record. And, you know, even when it comes to asset freeze injunctions like the one before the court now, those four factors are applied. Now, as I understand counsel's position, Mr. Elizaroff challenges the district court's findings with regard to likelihood of success on the merits and the risk of irreparable harm. And he also challenges primarily the authority of the district court to enter a preliminary injunction under the holding of Grupo Mexicano. And so I want to start with that because I think that is a big part of Mr. Elizaroff's argument. The question that—or the affirmation made by counsel is that the district court did not have the authority or acted outside of its authority when it entered the preliminary injunction to preserve Goldwater's ability to obtain equitable relief. And it's our contention that the district court was correct and held that Grupo Mexicano did not apply because Goldwater Bank asserted an equitable claim for unjust enrichment and sought the equitable remedy of a constructive trust over the proceeds from the sale of the subject property. And that holding is consistent with Grupo Mexicano. Grupo Mexicano, as the court's well aware, stands for the proposition that a district court lacks the authority to issue a preliminary injunction preventing a defendant from transferring assets where purely legal damages are sought. But that's been clarified by this court. In Johnson v. Courtier, this court held that by its very terms, the holding of Grupo Mexicano is limited to cases in which only monetary damages are sought. And this court affirmed that the Supreme Court expressly stated that a preliminary injunction barring asset transfer is available where the suit seeks an equitable remedy. And I think that language is important. Seeking an equitable remedy. What Mr. Elizaroff asked the court to do is make a determination or wants the district court to do is make a determination as to the viability of an equitable remedy or the extent to which an equitable remedy is available. And that's just not consistent with this court's precedent and the Supreme Court's precedent. While seeking an equitable remedy is certainly a gateway and a requirement before a fulsome consideration of the winner's factor should be undertaken by a district court, it's not a misapplication of the law for the district court to make that determination based on the relief that is sought, at least in part, by the plaintiff seeking the injunction, which is what the court did in part. So I think that our view, Goldwater Bank's view, is that the Grupo Mexicano case really just establishes a threshold question for the district court, which is, is this a case involving matters seeking equitable relief? And if that's the case, then you may move on to the winner's factors. And this court has addressed similar arguments. Mr. Elizaroff appears to argue for the adoption of a likelihood of success on the merits as to equitable relief standard for determining whether Grupo applies or not or whether its prohibition would apply. And that, one, would be difficult for district courts to apply in general, and it would be inconsistent with cases where this court has embraced the difficulties and high likelihood associated with making findings regarding the true scope of damages and delineating between damages that are available at law on specific facts and available in equity. So I think the proper measure here, the proper review of the district court's determination is whether or not they made a finding that the case involved equitable remedies. In SEC v. Lew, this court made it clear that to obtain a preliminary injunction, a party must show probable success on the merits of the case, not its entitlement to a specific remedy. In the same case, this court clearly held that requiring a party to definitively show entitlement to an equitable remedy would run contrary to well-established Ninth Circuit precedent. And, you know, I think it's cited to the Republic of Philippines v. Marcos case for that proposition and its progeny, which has been pretty well cited in the circuit. All that said, you know, for these reasons, we believe that the district court was not required to engage in analysis of an entitlement to injunctive relief. The district court was only required to engage in analysis as to whether or not the case involved a request for equitable relief. Moving on to the irreparable harm argument, which I think is the other big argument made by the appellant, we believe the district court did not err when it found that Goldwater would suffer irreparable harm if a preliminary injunction was not entered. And in the context of asset freeze injunctions, like the injunction at issue here, irreparable harm, that standard is satisfied in this context when a party puts forward evidence of dissipation of assets. That was the holding of NRA-focused media and other cases that are looking at similar things, including Republic of Philippines v. Marcos. And in this case, the district court made an express finding that there was evidence of dissipation of assets. In fact, the court made a finding saying that the evidence indicates that an intention to transfer or alienate the proceeds from the sale of the subject property, which would effectively result in Goldwater Bank losing its security interest in the subject property, particularly because Mr. Hill at Goldwater testified that Elizaroff told him that he was insolvent. This factual finding, under the review standards set forth by this court, should be entitled to extreme deference. The standard applied to findings of fact in this context is a clear error standard. And clearly, there was no error here. The evidence relied upon included misinformation and misdirection. In fact, the appellant misinforming Goldwater regarding the status of the sale to buy time so that he could go alienate the proceeds, failing to remit those proceeds, ceasing to communicate with Goldwater Bank, and instructing the escrow company to stop communicating so that Goldwater would be unaware when the transfer— I think we've covered all those facts already, so you don't have to repeat all those facts. I think we pretty much absorbed what you're saying. Thank you, Your Honor. The other final thing I'll touch on is the likelihood of success on the merits. I'm not sure that I read the briefing from the appellant to be a fulsome challenge to the district court's determination that there was a likelihood of success on the merits. What I think is being conflated here is the difference between a likelihood of success on the merits as to claims, which the court certainly found, and a likelihood of success on the merits as to relief. And I think the difference between those is important. As I mentioned earlier, I think that the clearly established precedent of this court indicates that there's not a requirement to make a determination as to the likelihood of entitlement to equitable relief, only that there's a likelihood of success on the merits as to the claims. And here it appears that Mr. Elizoff concedes that there's a likelihood of success on the merits as to the breach of contract claims. I would also, just to address one thing that was brought up by the appellant, and that is that the notice provision in the acceleration notice was given. There was no time period, and there is no time period in the contract requiring that that notice be given immediately. It was given and ran, I believe it was given on May 15th or so of 2021. And since that time, Mr. Elizoff has made no efforts to tender the funds due and owing, even after the acceleration was made. Similar arguments were made by Mr. Elizoff in front of the district court to move to dismiss certain claims and claim that Goldwater had not exercised its rights under the contract. Those arguments were rejected. As to the amount of the security bond, as the court is well aware, there's extreme deference given to the district court related to setting the bond. One thing that is significant is that generally in order to have standing to challenge the amount of the security bond, a party must have presented objective evidence to the district court as to the practical harm that might be suffered as a result of entering the injunction. In this case, that didn't happen. And so the appellant really doesn't have standing to request the bond be modified. I want to give the court a moment. If you guys have any questions, I'd love to answer them. That's the end of my formal presentation. I don't think so. Thank you very much, counsel. Thank you so much. You had a minute left, I think. Mr. Elizoff did not purchase the property in Florida because he wanted to deprive Goldwater of anything. He was a resident of Florida and would have purchased the property with a loan if this money didn't come along. Mr. Elizoff's negotiations with the bank long preceded his discovery of the fact that the Goldwater deed of trust had not been recorded. So counsel cannot say that somehow those negotiations were calculated or designed to defraud or mislead Goldwater in any way. At the time the loan was paid off, one, Mr. Elizoff had no idea that Goldwater had applied for a preliminary injunction or temporary restraining order. You said at the time the loan was paid off. I'm sorry, Your Honor? You said at the time the loan was paid off. I'm not sure that I understand. I apologize. I mean, counsel alluded to a payment that occurred after the sale of the property. There was a preexisting loan of $84,000 that was paid off. That was the loan I was referring to. I apologize, Your Honor. When that loan was paid off, two things happened. One, Mr. Elizoff did not know that Goldwater had even applied for a TRO because that was done without notice to him. And two, at the time, Mr. Elizoff had $110,000 in that same ally bank account, which would have been more than sufficient to cover that loan. And finally, to address the Court's concern about the dissipation of the assets, I would like to remind the Court that in Grupo Mexicano, those were the exact same circumstances. The reason the district court issued the injunction is because the defendant was basically transferring all of its assets elsewhere, which would have then denied the plaintiff of any benefit to collect the funds. This case is no different. And finally, if I may, I will address the issue of acceleration. Although the note does not explicitly say when the notice has to be given, the remedy for a failure of the borrower to pay upon the demand makes it clear that it had to happen before the sale because the remedy is the lender may then, quote, invoke any remedies permitted by this security instrument, which is the deed of trust, without notice or demand on the borrower. The only remedy that the lender has under the deed of trust is to foreclose on the property. So if by the time the notice is given, the property had already been sold, there is nothing to foreclose anymore, which implies that the notice had to be given. Thank you so much, Your Honor. Thank you, Counsel. It went well over your argument. Goldwater Bank v. Elizoroff will be submitted, and the session of the Court will adjourn for today. Thank you, Counsel. All rise. This Court for this session stands adjourned.
judges: WARDLAW, FLETCHER, Korman